### IN THE

# SUPREME COURT

### OF THE

# STATE OF VERMONT,

DURING THE JUDICIAL YEAR, COMMENCING IN OCTOBER, 1825, AND
ENDING IN OCTOBER, 1826.

—◦❖◦—

LYNDE CATLIN and GUY CATLIN, appellants, *vs.* LANSING BAR-
NARD and CHARLES BURNHAM, appellees.

Separate considerations, proceeding from two covenantees, and separate interests to be received by
them, do not make a covenant, otherwise apparently joint, a several covenant. Distinctive words
qualifying the promise, and carrying it in the entirety to each of the promisees, as, to them *and
each of them*, are also necessary to make it a several covenant.

THE plaintiffs declared against the defendants, in a plea of <span style="float:right">*Chittenden,*<br>December,<br>1825.</span> covenant broken, as follows: For that, whereas, heretofore, to wit, on the eleventh day of July, 1823, at Burlington aforesaid, by a certain indenture then and there made between Lynde Catlin, of the first part, Guy Catlin, of the second part, and the said Lansing Barnard and Charles Burnham, of the third part, one part of which said indenture, signed and sealed by said parties, the said Lynde and Guy here bring into Court, the date of which is the same day and year last aforesaid; the said Lynde and Guy Catlin did demise, lease, and to farm let, unto the said Lansing and Charles, a certain building occupied as a factory, below the gristmill on Onion river, in Burlington aforesaid, particularly mentioned in said indenture; and the said Guy Catlin did demise, lease, and to farm let, unto the said Lansing and Charles, all the machinery, tools and implements belonging to the said factory, in the same state as the said Guy received them from one Frederick Brewster, particularly mentioned in said indenture, and also the building formerly occupied by one Jonathan Boardman, as a clothier's shop, standing

2

*Chittenden,*
*December,*
*1825.*

*Catlin and*
*Catlin*
*vs.*
*Barnard and*
*Burnham.*

near the upper dam in said Burlington, with the privileges thereto belonging, particularly set forth in said indenture.—To have and to hold the said factory, with the machinery, tools and implements, and also the said clothier's shop, with all the privileges and appurtenances thereof and thereto belonging, to them, the said Lansing and Charles, for the term of fourteen years from the first day of May, 1824, yielding and paying therefor yearly and every year, to the said Lynde Catlin, the sum of three hundred forty-five dollars, and to the said Guy Catlin the sum of seven hundred dollars, on the first day of May, in each year. And the said Lansing Barnard and Charles Burnham, in and by said indenture, did covenant and agree with the said Lynde Catlin and Guy Catlin, among other things, that they would pay to the said Lynde Catlin, on the first day of May, 1824, the sum of three hundred forty-five dollars, and that they would pay to the said Guy Catlin, on the said first day of May, 1824, the sum of seven hundred dollars, as by the said indenture will more fully and at large appear.

Yet the said Lansing Barnard and Charles Burnham, not regarding their said covenant so made with the said Lynde and Guy Catlin as aforesaid, have not paid the said sum of three hundred forty-five dollars, to the said Lynde Catlin, on the first day of May, 1824, nor the said sum of seven hundred dollars to the said Guy Catlin, on the first day of May, 1824, nor any part thereof, though often thereto requested and demanded, but the same and every part thereof now remains due and unpaid, contrary to the true intent and meaning of the said indenture, and of the covenants of the said Lansing and Charles, in that behalf made as aforesaid. And so the said Lynde and Guy Catlin say, that the said Lansing and Charles have not kept and performed their said covenants, but have broken the same, to the great damage of the said Lynde and Guy Catlin, as they say, the sum of two thousand dollars; to recover," &c.

To this declaration there was a general demurrer, and joinder in demurrer.

*Thompson,* in support of the demurrer.

The declaration states, that, on the 11th of July, 1823, an indenture was made between Lynde Catlin, of the first part, Guy Catlin, of the second part, and Barnard and Burnham, of the third part: that Lynde and Guy Catlin leased to the defendants the factory below the Gristmill: that Guy Catlin leased the tools, machinery, &c., in said factory; also, the clothier's shop, above the gristmill, to the defendants; yielding and paying therefor, yearly, to the said Lynde, 345 dollars, and
                    to the said Guy,    700 dollars.
That Barnard and Burnham covenanted with the said Lynde and Guy, to pay to the said Lynde, 345 dollars, and
                    to the said Guy,    700 dollars;
yet the defendants have not paid to the said Lynde, 345 dollars, nor to the said Guy, 700 dollars.

From this declaration, no other construction can be given to the contract, than that the interests of the two plaintiffs are entirely distinct and several. And the defendants contend, that when the interests of the covenantors are several, they cannot join in the action, but must sue separately.—1 *Chit. pl.* 8. 9. *Brand and Herbert* vs. *Boulert.* 3 *Bosanquet and Puller*, 235. *Anderson* vs. *Martindale*, 1 *East*, 497.

*Chittenden,*
*December,*
1825.

Catlin and
Catlin,
*vs.*
Barnard and
Burnham.

The upper shop was leased by *Guy Catlin* to Barnard and Burnham. Suppose they should be ousted by some one having a better title; against whom would they bring their action of covenant broken? Must it not be against *Guy Catlin* alone?

If Barnard and Burnham should pay to Guy Catlin the 345 dollars rent, reserved for Lynde Catlin, would they not be still holden to Lynde for the same? Or, if Barnard and Burnham, at the expiration of the term, refuse to surrender the upper shop, can ejectment be brought by Lynde and Guy Catlin, or must it be brought by Guy Catlin alone?

*Adams* rose to reply, but was stopped by the Court, who intimated that they would hear further on the side of the defendants.

*Allen,* for the defendants. The books speak of the *several interests*. The interests are the considerations received for the lease. These are reserved to each lessor, separately.

But we may go back of this, and look into the property leased. Lynde and Guy Catlin lease certain tenements. Guy Catlin, also, leases certain other tenements and personal property; and the considerations flowing from the defendants are reserved, a part to Lynde and Guy Catlin, and a part to Guy Catlin separately. A discharge from Lynde and Guy Catlin, for Guy Catlin's share reserved to him, would be no discharge of the covenant to Guy Catlin.

The opinion of the Court was delivered by

ROYCE, J. The sole question submitted in this case is, whether a joint action can be supported for the non-payment of both or either of the rents mentioned in the covenant of the defendants, or, whether the plaintiffs should not have separately sued for the sums to be paid to them respectively? The property out of which the rent was to issue was leased to the defendants in part by the plaintiffs jointly, and in part by Guy Catlin alone. Whether the respective interests of the plaintiffs in the estate demised, were in the same relative proportion to each other as their respective portions of the rent reserved, does not appear; but the fair inference from the transaction is probably in favour of that supposition. And it is also to be inferred, that the several sums were to be received by the plaintiffs in their own individual rights, respectively. If, therefore, there is nothing in the covenant itself which makes it joint, the present action ought not to prevail. The indenture consisted of three parts : Lynde Catlin making the first part, Guy Catlin the second, and the defendants the third. It contains a joint demise from the

*Chittenden,*
*December,*
1825.

Catlin and
Catlin
*vs.*
Barnard and
Burnham.

plaintiffs to the defendants, of the factory; and from Guy Catlin alone, to the defendants, of the machinery and tools in the factory, and of the clothier's shop. Then follows a reservation of rent in the usual words: "yielding and paying therefor yearly and every year, to the said Lynde Catlin, the sum of three hundred and forty-five dollars, and to the said Guy Catlin, the sum of seven hundred dollars, on the first day of May in each year." Thus far the stipulation for rent appears to correspond to the supposed several interests of the plaintiffs in the estate demised, and in the rent when paid. And upon these words a joint action for the rent would not lie. But the parties saw fit to introduce a further express covenant from the defendants to the plaintiffs, which we understand to have been in these words: "And the said Barnard and Burnham do covenant and agree with the said Lynde Catlin and Guy Catlin, among other things, that they will pay to the said Lynde Catlin, on the first day of May, A. D. 1824, the sum of three hundred and forty-five dollars, and that they will pay to the said Guy Catlin, on the said first day of May, 1824, &c. the sum of seven hundred dollars." And upon this latter covenant the action is brought.

As already remarked, separate acts were to be performed to each of the plaintiffs, in which they were to be separately interested; and the question is, whether the legal interest in the covenant, while unperformed, follows the ultimate beneficial interest in the fruits of it? It is difficult to discover the object of the parties, in adding this covenant, if it was not to vary their respective rights and liabilities, which were otherwise sufficiently declared in the preceding parts of the indenture. Enough had been already said to entitle each of the plaintiffs to his respective portion of the rent; and though a more explicit engagement were supposed necessary; yet, if the purpose remained the same, why was not the express covenant for payment made to each of the plaintiffs separately? or why was not this covenant qualified by the introduction of disjunctive expressions; as the word *respectively*, or the more common words, *and each of them?* Every such expression appears to be studiously avoided, and the covenant is couched in the most explicit terms of a joint undertaking to both the plaintiffs. And we are of opinion, that no views to the consideration of the covenant, to the separate interests of the plaintiffs in the rent when received, will justify us to control the clear language of this contract. With suitable disjunctive expressions, this covenant would certainly have been construed to be several with each of the plaintiffs, by reason of their several interests; but without such expressions, it must be considered joint, for such are its terms. And this opinion is not without precedent. In Slingsby's case 5, Co. 19, it is said, "when it appears by the declaration, that every of the covenantees hath, or is to have, a several interest or estate, then, when the covenant is made with the covenantees, *and with each of them*, these words, *with each of*

Chittenden,
December,
1825.

Catlin and
Catlin
vs.
Barnard and
Burnham.

*them*, make the covenant several in respect of their several interests." This doctine is recognized in 1 *East*, 500, where Lord Kenyon, in speaking of Slingsby's case, with reference to this point, has the following observation. "And this distinction was taken which appears to be very sensible, that where every of the covenantees is to have a several interest or estate, there the addition of the words *with each of them* will make the covenant several in respect of their several interests." The same is repeated, 1 *Saund.* 155, (note 2.) From these authorities two things appear to be necessary to change a covenant to two or more persons, apparently joint, into several covenants to each of the covenantees: First, a several interest of each covenantee in the fruits of the covenant, and secondly the addition of the words, *with each of them*, or other equivalent expression. It is granted that the first of these requisites exists in this case, and we are called upon to dispense with the last. But we do not esteem the distinction as merely formal, but as founded in reason, and fit to be observed. The covenant in question is therefore a joint covenant to both the plaintiffs, and the present joint action is properly brought.

Judgment, that the declaration is sufficient.

*Charles Adams*, attorney for the plaintiffs.

*J. C. Thompson* and *Heman Allen*, attornies for the defendants.